# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|                                        |                              |
| -------------------------------------- | ---------------------------- |
| UNITED STATES OF AMERICA               |                              |
| v.                                     | Docket No. 1:15-CR-10224-PBS-2 |
| JERRI MARTINEZ-TEJEDA, et al.          |                              |

### DEFENDANT'S REPLY TO GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR RECONSIDERATION OF DETENTION ORDER

The defendant, Yoelly Carmenatty ("Ms. Carmenatty"), by and through undersigned counsel, hereby respectfully submits the following reply to the government's opposition to the defendant's motion for revocation of Magistrate Judge Hennessey's detention order. *See* Dkts. # 112, 127. Ms. Carmenatty avers and states as follows:

The government primarily argues that, notwithstanding the information provided in her motion for revocation of Magistrate Judge Hennessey's detention order, detention remains appropriate because: (1) she still poses a risk of flight because she has "minimal ties to the area," has the "incentive to flee," and has the "means to flee"; (2) that her proposed conditions of release are "unworkable and insufficient"; and (3) her proposed conditions of release do not mitigate her alleged risk to the community. *See* Dkt. # 127 at 5, 8, 11. In response, Ms. Carmenatty avers and states: (1) *significantly* more information has been provided to this Honorable Court about Ms. Carmenatty's ties to the community than what had been provided to Magistrate Judge Hennessey, and the government's arguments to the contrary do nothing to contradict this; (2) the proposed conditions in the motion to revoke Magistrate Judge Hennessey's orders are *substantially* more stringent than those conditions that were presented at

1

the actual detention hearing (which originally appeared to only include residing with a close friend in Lawrence, Massachusetts); (3) Ms. Carmenatty would be subject to the third-party suretyship of her cousin[1] and will also be monitored by her sister, neither of whom have any connections with the drug trafficking organization, and both of whom will swear an oath to this Court that they will immediately report any violations of her conditions; (4) the government's allegations as to Ms. Carmenatty's involvement with a plot to kidnap her co-defendant is non-specific especially as to her own involvement; and (5) Ms. Carmenatty is *not* facing a ten (10) year mandatory minimum prison sentence.  The main thrust of the government's contentions will be addressed as follows.

A.      **Risk of Flight**

To support the claim that Ms. Carmenatty has limited ties to the community, the government appears to rely on the fact that she reported to Pretrial Services that she "had limited family here," and that it is "unclear" why she "withheld" the information contained in Dkt. # 112 regarding her family in the area at the time of her interview.  *See* Dkt. # 127 at 5.  The answer to this is simple: it is not entirely unclear to undersigned counsel if prior counsel ever prepared Ms. Carmenatty for her interview with Pretrial Services or even if she had counsel present when the interview was conducted.  It is not unreasonable to conclude that Ms. Carmenatty, who is not remotely fluent in English, would not be fully aware of the significance of the interview without explanation from her defense counsel.  Ms. Carmenatty is presently very much willing to be reinterviewed by Pretrial Services in order to ensure the information they have (and which will be reported to this Court) is fully accurate.  Should this Honorable Court deem this appropriate, she respectfully requests that counsel be present for the interview.  In the interim, to help

---

[1] Undersigned counsel mistakenly indicated that Ms. Carmen Beltran is Ms. Carmenatty's sister; she is actually her cousin.

facilitate the home-confinement suitability assessment for 71 Woodman Street, as well as the third-party custodian proposal regarding Carmen Beltran[2] (one of Ms. Carmenatty's cousins) and co-residential suitability of another sister, Valentina Nieves,[3] undersigned counsel has provided to U.S. Probation Officer Denise Rivera the following further information:

- Ms. Nieves' (the leasehold tenant of 71 Woodman Street) phone number, date of birth, Legal Permanent Resident/Social Security Number and her immigration status.

- Ms. Beltran's phone number, date of birth, Social Security Number and immigration status.

- A scanned copy of Ms. Carmenatty's Green Card.

The government also relies on the fact that "[Ms.] Carmenatty's twelve-year old son is in the Dominican Republic" as additional evidence of her lack of ties to the community.  However, undersigned counsel notes for this Honorable Court that Ms. Carmenatty's twelve (12) year old son is currently in the process of immigrating to the United States. It is respectfully submitted, therefore, that if her son successfully immigrates to the United States and moves to the Boston area, Ms. Carmenatty's ties to the community become dramatically stronger.  Accordingly, the government's reliance on the present location of Ms. Carmenatty's son for purposes of the detention analysis is misplaced.

The government also argues that Ms. Carmenatty has an "incentive to flee" because the charge carries a maximum sentence of life imprisonment and since "[i]t is likely that the government will file money laundering charges against her, and possibly allege an amount of

---

[2] In Ms. Carmenatty's motion for release, undersigned counsel indicated that Ms. Beltran lives at a different residence in Lynn.  This is incorrect; Ms. Beltran already resides in 71 Woodman Street and is therefore already positioned to be Ms. Carmenatty's third-party surety.

[3] Ms. Carmenatty is proposing Ms. Beltran as actual third-party surety.  However, and as will be further discussed below, Ms. Nieves will be living there as well, and can serve as supplemental surety when not working.

heroin that triggers a ten year mandatory minimum sentence upon conviction." Whatever the government's future intentions are, the fact of the matter remains that Ms. Carmenatty is presently *not* subject to *any* mandatory minimum sentence. Lest the government has forgotten, it is not the government, but the grand jury, that determines whether there is probable cause for a superseding indictment to issue premised on an amount of heroin which triggers the mandatory minimum. Moreover, even if Ms. Carmenatty were eventually found guilty on the charges *presently before this Court*, any guidelines calculation would unquestionably be substantially below the maximum life sentence to which the government alludes. Simply put, that Ms. Carmenatty is not presently facing a mandatory minimum sentence places her in an even better position, from a detention analysis, than the defendant in *United States v. O'Brien*, 895 F.2d 810 (1st Cir. 1990).

Lastly, as to her risk of flight, the government argues, with absolutely no evidentiary support, that Ms. Carmenatty has "transferred money to the Dominican Republic. It has also been reported that the government failed to find a large sum of cash that had been hidden by Martinez-Tejeda and Carmenatty" at a location where a search warrant had been executed. Based on these bald assertions, the government argues further that "[s]he can easily purchase a new passport and identity documents with the money at her disposal." The government has simply failed to adduce any reliable evidence to establish that Ms. Carmenatty has any money, beyond the small sum of money Magistrate Judge Hennessey found she has access to ($3,000), which would enable her to flee. On the contrary, it appears Ms. Carmenatty now has *very* limited means and it is unclear to undersigned counsel how she could access funds "hidden" in other bank accounts, as the government alleges, *see* Dkt. # 127 at 12, without any form of

identification or other similar papers (all of which will be forfeited to Pretrial Services per her conditions of release).

In short, Magistrate Judge Hennessey had little information, indeed, when he ruled on the government's motion for detention. In Dkt. # 112, undersigned counsel has provided a substantial basis for this Honorable Court to conclude Ms. Carmenatty has strong ties to the community, notwithstanding the government's arguments to the contrary.

**B.     Conditions of Release**

The government contends that the conditions of released proposed in Dkt. # 112 are "unworkable" and "insufficient" for a variety of reasons.  First, the government complains that home confinement is not technically a "lock down" and GPS monitoring "does little to prevent flight" because there are "ways to remove the device and defeat its core function."  Undersigned counsel respectfully disagrees. If GPS monitoring is as ineffective as the government contends it is, its use throughout country would not be so widespread.  Moreover, Ms. Carmenatty will be subject to the watch of a third-party surety, Ms. Beltran (her cousin), as well as her sister, Ms. Nieves, when she is home from work.  Undersigned counsel respectfully requests this Honorable Court adjudge their willingness to uphold the oaths they will have sworn and the sincerity with which they will have made them.  Moreover, even if Ms. Carmenatty were to somehow escape home confinement, it is unclear where she would go without money and without identification. The government's claim that Ms. Carmenatty "could also cross into Mexico without documentation surreptitiously, and has the money to hire someone to help her" is without merit for the reasons set forth in Part A of this reply.

The government also suggests Ms. Carmenatty's third-party surety, Ms. Beltran, was present at the residence at which the government executed a search warrant in connection with

this case  and "was involved in the drug trafficking organization's money laundering activity." As to the former contention, Ms. Beltran's mere presence in the location where the search warrant was executed does little to undermine any oath she may swear to.  As to the latter, undersigned counsel is presently unaware of any such evidence linking Ms. Beltran to the alleged drug trafficking conspiracy.[4]  It strains credulity for the government to make such a bald assertion without citing to any evidence or even alluding to any wiretaps which might suggest her involvement.  Importantly, Ms. Beltran has not been charged and the government has made no indication she will be named in any superseding indictment.

Finally, the government complains that the proposed conditions that Ms. Carmenatty not possess a cellular phone and that the visitors to Ms. Nieves' home be limited to certain those persons pre-approved by this Court and Pretrial Services are unenforceable.  Again, Ms. Carmenatty will be subject to the third-party suretyship of both her cousin (24 hours a day) and her sister (when she is home from work).  They will be in a position to prevent her from gaining access to a cell phone, computer or other device, or from allowing unapproved visitors into the home.  The government's claim that Ms. Carmenatty "will use a cellular phone purchased by one of her sisters instead" suggests it has little faith in this Court's determination of the character of the proposed sureties.  Both Ms. Nieves and Ms. Beltran (and other family and friends) will be present at the currently scheduled hearing on November 30 and will be willing and able to answer any of this Court's questions.  Undersigned counsel merely ask that the proposed sureties be given an opportunity to establish for this Court their sincerity and willingness to uphold any oaths they swear to.

**C.      Risk to the Community**

---

[4] The government may be alluding to a prior criminal charge Ms. Beltran has faced.  According to probation, however, that charge was dismissed.

6

The government has essentially reproduced the same arguments it made in its *Supplemental Submission Regarding Detention*, *see* Dkt. # 33, in order to attempt to establish Ms. Carmenatty's danger to the community.   First, the government argues that "[h]eroin and fentanyl present an enormous risk to the community... Any additional sales of heroin or fentanyl pose an unacceptable risk to the community."   As Ms. Carmenatty previously argued in Dkt. # 112, these dangers are all *retrospective* assuming she was active in the alleged conspiracy.   The government has adduced no evidence that she will have the capability to conduct any "additional sales of heroin or fentanyl" *going forward* if released, especially in light of the proposed conditions.

Second, the government again argues that, based on certain intercepted phone calls, Ms. Carmenatty "was willing to subject co-defendant Lily Solis to kidnap and torture when she thought Solis and Joel Rougeau had stolen the fentanyl shipment."   Undersigned counsel has reviewed these materials and they do not go nearly as far as the government contends.   While the calls seem to suggest that Ms. Carmenatty's codefendant, Martinez-Tejeda, sought to hire someone to kidnap Solis and Rougeau, they do not indicate Ms. Carmenatty shared that same willingness or intent.   Importantly, if the government's allegations are true it seems it would be able to make a prima facie case of attempted kidnapping against Ms. Carmenatty; the government, however, has not charged her with attempted kidnapping and, even while it bandies about a forthcoming superseding indictment, there is no indication such charge(s) are forthcoming.   It is respectfully submitted this fact alone strongly suggests this Honorable Court should view the government's recitation of the intercepted calls, and their significance, with a jaundiced eye.

Dated: November 29, 2015

Respectfully submitted,
YOELLY CARMENATTY
By and through her attorney,

 /s/ *R. Bradford Bailey*
R. Bradford Bailey, BBO#549749
BRAD BAILEY LAW, P.C.
10 Winthrop Square, 4th Floor
Boston, Massachusetts 02110
Tel. 857.991.1945
Fax. 857.265.3184
brad@bradbaileylaw.com

Certificate of Service

I, R. Bradford Bailey, hereby certify that on this, the 29th day of November 2015, I caused a true copy of the foregoing motion to be served upon all necessary parties by virtue of electronically filing the same via the CM/ECF system.

 /s/ *R. Bradford Bailey*
R. Bradford Bailey

8